**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

STEVEN BARGA,  :

                Plaintiff,

   -vs-

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY[1],

                Defendant.  :

Case No. 3:07-cv-041

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

        Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

        Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a

---

[1] The Court notes that on February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. See, http://www.ssa.gov/pressoffice/pr/astrue-pr.htm. In accordance with Fed.R.Civ.P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as Defendant in this action. However, in accordance with the practice of this Court, the caption remains the same.

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any

other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act.  42 U.S.C. §1381a.  With respect to the present case, eligibility is dependent upon disability, income, and other financial resources.  42 U.S.C. §1382(a).  To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §1382c(a)(A).  A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers.  42 U.S.C. §1382c(a)(3)(B).  Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application.  *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations.  20 C.F.R. §404.1520 .  First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled.  Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments;  if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment;  if not, the

3

claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on January, 2001, and November, 2002, alleging disability from November 1, 2000, due to a learning disorder, depression, congestive heart failure, diabetes, and hypertension. (Tr. 57-60; 636-63; 65-74). Plaintiff's applications were denied initially and on reconsideration. (Tr. 39-42). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 641-68), who determined that Plaintiff is not disabled. (Tr. 10-33). The Appeals Council denied Plaintiff's request for review, (Tr. 6-8), and Judge Padilla's decision became the Commissioner's final decision.

Plaintiff filed an action in this Court seeking judicial review of the Commissioner's decision. *Barga v. Barnhart,* No. 3:03cv469, (S.D.Ohio Dec. 22, 2003) at Doc. 1 ("*Barga* I"); Tr. 745-46. Pursuant to the parties' Joint Stipulation to Remand, the Court entered judgment in favor of Plaintiff and against the Commissioner and remanded the matter for additional administrative proceedings. (Tr. 748-49; 750); *Barga* I (Doc. 8, 9, 10).

On remand, Judge Padilla held a hearing, (Tr. 708-44), and subsequently determined that Plaintiff became disabled on January 2, 2004, but that he was not disabled prior to that date. (Tr. 678-704). The Appeals Council denied Plaintiff's request for review, (Tr. 669-72), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that he has non-ischemic cardiomyopathy, obesity, anxiety, depression, diabetes mellitus, chronic obstructive

4

pulmonary disease, a history of alcohol abuse in reported remission, and a history of noncompliance with treatment recommendations including diet, exercise, and prescribed medications. (Tr. 701, finding 3). Judge Padilla also found that Plaintiff's impairments did not meet or equal the Listings at anytime between November 1, 2000, and January 2, 2004, but that at all times since January 2, 2004, they have met Listing 4.02. *Id.*, finding 4. Judge Padilla then found that between November 1, 2000, and November 1, 2001, Plaintiff had the residual functional capacity to perform a limited range of medium work, and that between November 1, 2001, and January 2, 2004, he was limited to performing a limited range of light work. *Id.,* findings 5, 6. Judge Padilla then used sections 203.21 through 203.24 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony and concluded that there was a significant number of jobs in the economy that Plaintiff was capable of performing between November 1, 2000, and November 1, 2001. (Tr. 702, findings 12, 13). Judge Padilla then used sections 202.13 through 202.15 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony and concluded that there was a significant number of jobs in the economy that Plaintiff was capable of performing between November 1, 2001, and January 2, 2004. *Id.*, finding 14; Tr. 703, finding 15. Judge Padilla concluded that Plaintiff was not disabled between November 1, 2000, and January 2, 2004, but that he has been under a disability since January 2, 2004. (Tr. 703).

As Plaintiff notes in his Statement of Specific Errors, the issue in this case is whether Plaintiff was disabled from his alleged onset date of November 1, 2000, until December, 2003. (Doc. 5). Plaintiff's position is that during that closed period, he was capable of performing only a range of sedentary work and he was therefore disabled pursuant to §201.14 of the Grid. *Id*.

During the period July 16, 1997, to March 7, 2002, Plaintiff was treated by Dr.

5

Butman of the Primary Care Physicians. (Tr. 127-92). During that period of time, Dr. Butman treated Plaintiff for uncontrolled diabetes, congestive heart failure, diabetic neuropathy, proteinuria, and hypertension. *Id.* Over time, Dr. Butman also noted that Plaintiff had an inguinal hernia, extensive varicosities of the lower extremities, morbid obesity, anxiety with depression, retinopathy, nephropathy, cardiac arrhythmia, coronary artery disease, and arterial sclerotic heart disease. *Id.* On October 31, 2000, Dr. Butman noted that Plaintiff had been ill since October 30, 2000, and that he would able to return to work on November 6, 2000. *Id.*

During the period March 4, 1998, to February 19, 2002, Plaintiff received treatment from the physicians at Advanced Cardiovascular Services. (Tr. 258-97). During that period of time, Plaintiff was treated for nonischemic cardiomyopathy and atrial fibrillation. *Id.* On March 14, 2001, Dr. Orem of the Advanced Cardiovascular Services Group reported that Plaintiff had been under his care since November 27, 2000, and that he was not able to work. *Id.* Dr. Orem also reported that Plaintiff was released to return to work after his December 27, 2000, office visit, with limitations of lifting no more than 25 pounds, no stairs or bending, and working no more than 8 hours per day. *Id.*

Treating psychiatrist, Dr. DeLeon reported on January 22, 2001, that she first saw Plaintiff on October 30, 2000, and last saw him on January 8, 2001, that his diagnosis was major depression with anxiety and panic disorder, that he was oriented, had a labile affect, that he was somatically preoccupied, that he had a fair ability to understand and follow instructions, a fair ability to maintain attention required to perform simple repetitive tasks, and that he was moderately impaired in his ability to withstand ordinary stress and pressures associated with day-to-day work activities. *Id.*

6

In February, 2001, treating physician Dr. Ballas of the Woodbury Family Practice reported that Plaintiff had diagnoses of congestive heart failure, Type II diabetes, hypertension, anxiety, and depression. (Tr. 365-66). Dr. Ballas reported that he first saw Plaintiff on January 23, 2001, and at that time he was seeing Dr. Butman for his diabetes and Dr. Orem for his hypertension and non-obstructive coronary artery disease. *Id*. Dr. Ballas reported further that Dr. Orem had reported that although Plaintiff did have some cardiac findings, most of his symptoms of shortness of breath were probably related to his obesity and not to his heart. *Id.* Dr. Ballas noted that in terms of Plaintiff's depression, he (Dr. Ballas) had encouraged Plaintiff to continue to follow up with Dr. DeLeon but that he was upset with Dr. DeLeon because he felt that she was not listening to him. *Id*. Dr. Ballas noted further that Plaintiff stated that Dr. DeLeon would not put him on disability based on his anxiety and depression alone although they were certainly playing into his ability to perform at his job. *Id*. Dr. Ballas also noted that Plaintiff had not been compliant with his medications. *Id*. Dr. Ballas suggested that Plaintiff continue disability basically due to obesity causing shortness of breath, although certainly his other diagnoses contributed to his inability to work. *Id*. Dr. Ballas was hopeful that he could get things turned around where Plaintiff could get back to work within six months of when he last saw him which was January 23, 2001. *Id*.

Dr. Butman reported on June 8, 2001, that he first saw Plaintiff on September 16, 1997, and last saw him on June 2, 2001. (Tr. 401-02). Dr. Butman also reported that Plaintiff's diagnoses were diabetes, hypertension, retinopathy, anxiety, depression, and arteriosclerotic heart disease. *Id*. Dr. Butman noted that Plaintiff's abilities to sit, stand, and walk were limited, that he was unable to bend, lift, or carry, that he was unable to travel, and that his abilities with respect to social interaction were impaired. *Id.*

7

Treating physician Dr. Ballas reported on June 14, 2001, that Plaintiff was an obese, depressed, anxious diabetic who liked to take medications that seem to make him feel better and if they don't, he goes ahead and stops them on his own.  (Tr. 363-64).  Dr. Ballas also reported that he believed that if Plaintiff went back to work, he would be constantly complaining of shortness of breath and pains in his chest, but that other than recent pneumonia, the cardiologist had not been able to find any objective evidence that he needs to be on complete disability.  *Id*.  Dr. Ballas opined that the disability of his depression would prevent Plaintiff from effectively being a useful employee, that despite minimal objective evidence that he had, he recommended that Plaintiff be considered for disability due to depression and obesity causing shortness of breath.  *Id*.  Dr. Ballas also opined that perhaps with time, Plaintiff would be able to become a productive employee at some job.  *Id*.

On July 23, 2001, Dr. DeLeon reported that Plaintiff's diagnoses were major depression, generalized anxiety disorder and dependent personality disorder.  (Tr. 406-09).  Dr. DeLeon also reported that Plaintiff's GAF was 55, that he had mild impairments in his activities of daily living, marked impairments in his social functioning, moderate impairments in concentration, persistence and pace, and that his impairment level with respect to adapting to stressful conditions precluded useful function.  *Id*.  Dr. DeLeon noted that the effects of treatment were fair to poor, that Plaintiff's motivation was poor, and that it was unknown when he would be able to return to work. *Id.*

Examining psychologist Dr. Higgins reported on August 22, 2001, that Plaintiff graduated from high school, was cooperative during the examination, that his speech quality was normal but somewhat slowed, that his speech was relevant, coherent, and goal directed, and that his stream of thought was somewhat slowed.  (Tr. 409-14).  Dr. Higgins also reported that Plaintiff had

8

a flat affect, was alert and oriented, that his intellectual functioning was estimated to be in the low average range of abilities, that he showed signs of depression and anxiety, and that it appeared that the depression was related to the death of his son and the unresolved grief surrounding the death, and that his difficulties had also been exacerbated by his physical difficulties. *Id*. Dr. Higgins opined that Plaintiff's diagnosis was major depressive disorder, moderate. *Id*. Dr. Higgins opined that Plaintiff's ability to relate to others was moderately impaired, that he had difficulty concentrating on what others say, that his ability to understand and follow instructions was moderately impaired, that his ability to maintain attention to perform simple repetitive tasks was mildly impaired, and that his ability to withstand the stress and pressures associated with day-to-day work activity was moderately impaired. *Id*.

Examining physician, Dr. Danopulos reported on October 29, 2001, that Plaintiff presented with five major complaints which he alleged prevented him from working, including effort related shortness of breath, diabetes, hypertension, overweight, and depression and anxiety. (Tr. 417-33). Dr. Danopulos also reported that the review of Plaintiff's systems was negative, his lungs were clear, chest excursions were diminished, expiration was not prolonged, and that his heart tones were normal. *Id*. Dr. Danopulos noted that Plaintiff's lumbosacral motions were restricted but painless, there was no evidence of nerve root compression or peripheral neuropathy, his neurological examination was normal, a pulmonary function study revealed a moderate degree of restrictive lung disease without an obstructive component and with no bronchodilator effect, and that a chest x-ray gave the impression of cardiomegaly. *Id*. Dr. Danopulos also noted that the objective findings included restrictive lung disease due to morbid obesity, mature onset insulin dependent diabetes, poorly controlled hypertension, unusual morbid obesity and circumstantial depression. *Id*. Dr.

9

Danopulos opined that Plaintiff's ability to do any work related activities was restricted from all of the above noted conditions, that his mental status was satisfactory, and that there were no medical contraindications for an exercise stress test. *Id*.

On January 3, 2002, Dr. Butman reported that Plaintiff was able to stand for one to two hours, walk for one hour, sit for one to two hours and drive for one hour. (Tr. 397-99). Dr. Butman also reported that Plaintiff was not able to lift or carry any weight, that he was not receiving any treatment or medication that might affect his ability to work, that his disabling diagnoses were depression, congestive heart failure, morbid obesity, diabetes, hypertension, varicosities of his left leg, dyspnea, edema, and episodes of chest pain. *Id*. Dr. Butman noted that Plaintiff was unable to exert himself, was unable to sit or stand for any length of time, that his prognosis for returning to his occupation was fair, that his prognosis for returning to any occupation was fair, and that Plaintiff was not able to perform the duties of another occupation. *Id.*

On April 25, 2002, Dr. Butman reported that Plaintiff's diagnoses were depression, anxiety, obesity, congestive heart failure, edema, and retinopathy. (Tr. 390-93). Dr. Butman reported further that Plaintiff's prognosis was fair, that he was incapable of performing even low stress jobs, that he was able to sit for 20 minutes at a time, stand for 15 minutes at a time, and that he was able to sit and stand/walk for less than two hours in an 8-hour working day. *Id*. Dr. Butman noted that Plaintiff would need an unscheduled break every 30 minutes for 30 minutes, that his legs should be elevated 100% of the time, that he was not able to lift and carry any weight, and that as a result of his impairment it was likely Plaintiff would be absent from work more than four days per month. *Id*.

Plaintiff continued to receive treatment from the physicians at the Advanced

Cardiovascular Services. (Tr. 525-29). It was noted on June 10, 2002, that Plaintiff was in atrial fibrillation, that he appeared to be at optimum benefit from medical therapy except that his blood pressure remained significantly elevated, and that he appeared to remain in New York Heart Association functional class II-III as previously noted. *Id*. On August 14, 2002, it was noted that Plaintiff had poorly controlled insulin dependent Type II diabetes, hyperlipidemia, obesity, hypertension under fair to poor control, trace to mild mitral insufficiency, and a reduced left ventricular ejection fraction of 40-45% by echocardiography/35% by gated study. *Id.* It was also noted that Plaintiff had shortness of breath with moderate exertion as well as an episode of total body numbness without near syncope, syncope, chest pain, shortness of breath, or diaphoresis. *Id*. It was also noted that Plaintiff had had atrial fibrillation and that he had been cardioverted on two separate occasions with the inability to sustain sinus rhythm, that he had been placed on Coumadin but this caused excessive GI intolerance and he did not wish to continue taking it, and that he remained on aspirin. *Id.*

Plaintiff continued to receive treatment from Dr. Butman during the period March 7, 2002, through October 2, 2002. (Tr. 350-40). During that time, Dr. Butman noted that Plaintiff's blood pressure continued to be elevated, and that Plaintiff had edema of his extremities. *Id.*

The record contains Plaintiff's voluminous treatment notes from the Veteran's Administration facility dated January 4, 2002, through May 2, 2005. (Tr. 543-635; 782-1200). Those records indicate that Plaintiff received treatment at that facility for his various medical conditions including diabetes, hypertension, congestive heart failure, GERD, morbid obesity, and vision impairments. *Id*.

The medical advisor (MA) testified at the administrative hearing that Plaintiff had

11

several medical problems including diabetes, retinopathy, macular degeneration, polysensoneuropathy associated with diabetes, proteinuria, obesity, cardiac disease, chronic lung disease, varicose veins, and signs of degenerative joint disease. (Tr. 724-39). The MA also testified that starting in early 2004, in combination with his pulmonary disease and his recurring heart failure, Plaintiff, may have meet Listing 4.02, that he was severely limited with his ejection fraction of 25-30%, that beginning in April, 2002, Plaintiff had marked limitation of physical activity as documented by his severe dyspnea, but that prior to that he did not meet or equal any of the Listings. *Id.* The MA testified further that from the onset date [November 1, 2000], through October, 2001, Plaintiff was capable of performing medium work, that starting in late October or November of 2001, he was restricted to light work and that in late 2003, when he started having swelling of the abdomen, he was limited to sedentary work. *Id.* The MA also testified that an individual in [cardiac] functional class III could not sustain a level of light work. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by improperly weighing the medical evidence, by failing to find that he had a severe impairment of his fingers and hands, by improperly evaluating the effect his mental impairments have on his ability to perform work, by rejecting his allegations of total disability, and by relying on the VE's testimony which was in response to an improper hypothetical question and which identified jobs which were only 35 hours a week. (Doc. 5).

In support of his first issue, Plaintiff argues that the Commissioner erred by rejecting Dr. Butman's opinion.

A treating physician's opinion is entitled to weight substantially greater than that of

12

either a nonexamining medical advisor or an examining physician who saw a claimant only once. *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983).

In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters v. Commissioner of Social Security,* 127 F.3d 525 (6th Cir. 1997).

Plaintiff's position is that Dr. Butman opined in 2001 and 2002, that he (Plaintiff)

was disabled and that the Commissioner erred by rejecting that opinion. First, the Court notes that while Dr. Butman reported in June, 2001, that Plaintiff's abilities to sit, stand, and walk were "limited" and that he was unable to bend, lift, or carry, and travel, he failed to identify Plaintiff's specific limitations and he did not opine that Plaintiff was totally disabled. (Tr. 401-02). However, on January 2, 2002, and again on April 25, 2002, Dr. Butman did essentially opine that Plaintiff was disabled. However, Dr. Butman's opinion is not well supported by his clinical notes and is inconsistent with the other evidence of record.

During the period of time that Dr. Butman opined that Plaintiff was disabled, he reported few objective clinical findings. For example, Dr. Butman reported that Plaintiff had, at worst, mild edema and mild retinopathy. In addition, although Dr. Butman opined that Plaintiff had limited, if any, abilities to sit, grasp, perform fine manipulation, reach, and pull, his clinical notes contain no objective findings as to impairments in those functions. Further, in January, 2002, Dr. Butman reported that Plaintiff was able to sit for two hours and perform fine manipulation, grasping, pushing, and pulling. Subsequently, in April, 2002, without providing any new or additional clinical findings, Dr. Butman reported that Plaintiff was able to sit only 20 minutes and that his abilities with respect to grasping, performing fine manipulation, and reaching were quite limited.

In contrast to Dr. Butmans' opinion, treating physician Dr. Orem reported in March, 2001, that with certain limitations, Plaintiff was released to return to work after his December 20, 2000, office visit. Additionally, in November, 2001, the reviewing physician opined that Plaintiff was capable of performing a range of medium work. (Tr. 473-80). Finally, in August, 2001, Plaintiff reported that he goes with his wife to pay bills, to physical therapy, to his daughter's house to visit, does laundry, cooks, does the dishes, and takes care of the dog. On June 10, 2002, Plaintiff reported

14

to his health care provider at Advanced Cardiovascular Services that he was doing yard work, that he was able to lift up to 15 pounds, and that he walks around his neighborhood. Finally, in addition to the above activities, Plaintiff also testified that he sweeps, vacuums, shops, and makes the beds.

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Butman's opinions that Plaintiff is disabled.

Plaintiff argues in support of his second Error that the Commissioner erred by failing to find that he has a severe impairment of his fingers and hands.

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir. 1985)(citation omitted); *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

An ALJ does not commit reversible error in finding a non-severe impairment where the ALJ determines that a claimant has at least one other severe impairment and then goes on with the remaining steps in the disability evaluation, since the ALJ considers all impairments, including non-severe impairments, in determining residual functional capacity to perform work activities. *See, Masiarz v. Secretary of Health and Human Services,* 837 F.2d 240, 244 (6th Cir. 1987).

As noted above, the Commissioner determined that Plaintiff has several severe impairments. In addition, the Commissioner determined at the fifth step of the sequential evaluation process that Plaintiff was not disabled prior to January, 2004. Pursuant to *Masiarz* the Commissioner did not err by failing to find that Plaintiff does not have a severe finger/hand impairment. Nevertheless, the evidence supports the Commissioner's implicit finding with respect

15

to a finger/hand impairment. First, as noted above, Plaintiff reported that he does yard work, performs household chores including cooking, washing dishes, doing laundry, and making beds. Such activities are inconsistent with allegations of finger/hand impairments. The Commissioner did not err in this regard.

Plaintiff alleges next that the Commissioner improperly evaluated the effect his mental impairments have on his ability to perform work. Specifically, Plaintiff argues that the Commissioner failed to find that he had difficulty dealing with stress of a job and that he could perform only simple tasks which are not time-pressured.

Contrary to Plaintiff's argument, the Commissioner determined that Plaintiff was "limited to performing low-stress jobs which did not involve production quotas, interpersonal contact with members of the general public, or more than brief, superficial contact with co-workers and supervisors." (Tr. 701, finding 5). By limiting Plaintiff to low stress jobs that did not involve production quotas, the Commissioner accommodated Plaintiff's impairment with respect to performing jobs are time-pressured. Additionally, by limiting Plaintiff to low stress jobs, the Commissioner accommodated any difficulty with dealing with job stress.

Plaintiff argues next that the Commissioner erred by rejecting his subjective complaints and allegations.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v.*

*Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers, supra* (citation omitted). Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

For the same reasons that the Commissioner had an adequate basis for rejecting Dr. Butman's opinion, the Commissioner had an adequate basis for rejecting Plaintiff's subjective complaints and allegations. Specifically, and briefly, the objective medical evidence does not support Plaintiff's allegations and his self-reported activities are inconsistent with a claim of total disability. The Commissioner did not err as Plaintiff alleges.

Plaintiff's final challenge to the Commissioner's decision is that he erred by relying

on the VE's testimony because it was in response to an improper hypothetical question and because the VE identified jobs that involve working only 35 hours per week.

A hypothetical question must accurately portray the claimant's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). If a hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); *see also, Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994). A hypothetical question need only include those limitations accepted as credible by the ALJ. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993). A vocational expert's response to a hypothetical question that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists. *Varley*, 820 F.2d at 779-80.

Plaintiff argues that the hypothetical question which Judge Padilla propounded to the VE did not include hand or finger-related limitations or a limitation involving the performance of time-pressured tasks.

First, as noted above, the Commissioner did not err by failing to find that Plaintiff has a hand/finger impairment. It follows, then, that the Commissioner did not err by failing to include any hand/finger limitations in the hypothetical question he presented to the VE. *Casey, supra.* Next, as also noted above, by limiting Plaintiff to low-stress jobs which did not involve production quotas, interpersonal contact with members of the general public, or more than brief, superficial contact with co-workers and supervisors, the Commissioner accommodated Plaintiff's alleged difficulty with performing time-pressured task.

18

Finally, the Court notes that the VE testified that the jobs she identified involved working 35 hours per week and up. (Tr. 743). Plaintiff argues that this testimony "does not comply with the requirements of Ruling 96-8p". For the following reasons, Plaintiff's argument is not persuasive.

Social Security Ruling (SSR) 96-8p addresses the issue of assessing residual functional capacity in initial claims. SSR 96-8p, 1996 WL 374184 (July 2, 1996). Its purpose is to state the Social Security Administration's policies and policy interpretations regarding the assessment of *residual functional capacity* in initial claims for disability benefits under the Act. *Id.* It does not address the issue of substantial gainful activity.

The regulations do, however, provide that substantial gainful activity is work activity that is both gainful and substantial, that gainful work activity is work activity that an individual does for pay or profit, and that substantial work activity is work activity that involves doing significant physical or mental activities and that work may be substantial *even if done on a part-time basis*. 20 C.F.R. § 404.1572 (emphasis added).

The Commissioner did not err by relying on the VE's testimony in determining that there were a significant number of jobs in the economy that Plaintiff was capable of performing during the closed period at issue.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v.*

19

*Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

September 6, 2007.

*s/ Michael R. Merz*
Chief United States Magistrate Judge


NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).